FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT, E.D.N.Y.
★ JAN 04 2007 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X

KAZEL R. ANTHONY,    :    06 CV 180 (ARR)

                     Petitioner,    :    <u>NOT FOR ELECTRONIC
OR PRINT
PUBLICATION</u>

-against-

NEW YORK STATE DIVISION OF PAROLE,    :    <u>OPINION AND ORDER</u>
ATTORNEY GENERAL OF NEW YORK,

                     Respondents.

-------------------------------------------------------------------- X

ROSS, United States District Judge:

Kazel R. Anthony, proceeding <u>pro se</u>, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on the grounds that the New York State Division of Parole denied his application for parole in violation of his federal constitutional rights. For the reasons stated below, the court denies Anthony's petition.

## BACKGROUND

On the night of March 27, 1965, three butchers were murdered by gunshots to the head, their bodies found in the walk-in refrigerator of their Brooklyn meat market. Anthony, an employee of the meat market with no prior criminal history, was arrested and, after an overnight interrogation, he confessed to the murders. A jury found Anthony guilty of three counts of murder in the first degree. On December 9, 1965, Anthony was sentenced to life imprisonment, (Fleischmann Decl. Ex. A), a term that was reduced to 20 years to life as a result of legislation in 1972. <u>See</u> N.Y. Exec. Law § 259-h(1)(a). The Appellate Division, Second Department, affirmed

1

the conviction on appeal. See 289 N.Y.S.2d 397 (App. Div. 2d Dep't 1968). After granting leave to appeal, the New York Court of Appeals affirmed Anthony's conviction, while reversing the conviction of his co-defendant. People v. Anthony, 24 N.Y.2d 696 (N.Y. 1969).

(A federal habeas petition was dismissed in 1989 for failure to exhaust state court remedies. See Anthony v. Kirk, No. 88 Civ. 2383, 1989 U.S. Dist. LEXIS 3032 (E.D.N.Y. Mar. 27, 1989). The court further notes that Anthony brought an Article 78 proceeding challenging the seventh denial of parole, which the state courts dismissed in 1998. See Anthony v. N.Y. State Div. of Parole, 679 N.Y.S.2d 158 (App. Div. 3d Dep't 1998) (affirming Supreme Court's dismissal of petition), leave to appeal denied by 92 N.Y.2d 812 (N.Y. 1998).)

Anthony is currently incarcerated at Wallkill Correctional Facility. Anthony's first appearance before the Parole Board, in January 1985, resulted in a denial of parole, as has happened every two years since. (Fleischmann Decl. Ex. C.) As the state court noted in denying Anthony's Article 78 petition challenging the 2003 denial of parole, Anthony "has received numerous commendations for his dedication and contributions to the Wal[l]kill Correctional Facility and the surrounding community. He has been praised for volunteering above and beyond his daily routine and being reliable and hardworking in his position as heavy equipment operator." (Fleischmann Decl. Ex. I at 2.) The last time prison authorities issued Anthony a disciplinary ticket was in November 1992. (Fleischmann Decl. Ex. C; Fleischmann Decl. Ex. D at 5.)

## 2003 Parole Denial

On January 21, 2003, Anthony appeared before the Parole Board for the tenth time and was examined by Commissioner Edward R. Mevec. (Fleischmann Decl. Ex. D.) During the

interview, Anthony expressed remorse for the crime. (Fleischmann Decl. Ex. D at 4-5, 8.) Commissioner Mevec noted Anthony's excellent institutional record, stating: "Your program evaluations are excellent. You've been in compliance with the program recommendations. Disciplinary, needless to say you haven't had a ticket since well, it's actually a little over ten years now. You've been doing very well." (Fleischmann Decl. Ex. D at 5.) Anthony also discussed his plans to live with his sister in North Carolina, where his children live, and his desire to work in construction if released. (Fleischmann Decl. Ex. D at 5-7.) Commissioner Mevec raised concerns with how Anthony would adjust to life outside of prison after nearly forty years inside prison, to which Anthony responded, "I don't feel it will be a problem," while noting he would inform his parole officer if it were a problem. (Fleischmann Decl. Ex. D at 6-8.)

Anthony was denied parole and ordered held another 24 months. The Board's decision, in its entirety, was as follows:

> Parole is again denied due to the extreme gravity of your crime, murder first degree, three counts. You brutally shot and killed your three employers. These acts were calculated and unprovoked. For this panel to hold otherwise would deprecate the seriousness of your crime and would undermine respect for the law. The guidelines are unspecified.

(Fleischmann Decl. Ex. D at 10.)

Anthony filed an administrative appeal of the Board's decision. The Statement of the Appeals Unit's Findings and Recommendation addressed three challenges raised by Anthony: (1) that the Board's decision was arbitrary and capricious in violation of due process because the Board only considered the underlying offense while failing to consider or properly weigh the required statutory factors such as his excellent institutional record; (2) that the 24 month hold

imposed for the tenth time is excessive; and (3) that the Board, since its decision was "predetermined," illegally re-sentenced him. (See Fleischmann Decl. Ex. O; Fleischmann Decl. Ex. F.) The Parole Board's decision was affirmed by the Appeals Unit on July 3, 2003. (Fleischmann Decl. Ex. F.) On August, 26, 2003, Anthony filed an Article 78 petition in state court, (Fleischmann Decl. Ex. G), which was dismissed in a decision dated March 8, 2004. (Fleischmann Decl. Ex. I.) The state court held that "despite petitioner's exemplary record while incarcerated, it cannot be said that the Board acted irrationally or outside the scope of its authority so that the court is not entitled to substitute its judgment for that of the Board." (Fleischmann Decl. Ex. I at 8.) The court further stated:

> Simply because the Board found that the extremely serious nature of the crime so outweighs petitioner's impressive accomplishments while in prison as to warrant a denial of parole does not mean the Board abused its discretion and its decision was affected by irrationality bordering on impropriety. As required by statute, the Board of Parole has given its rationale for the denial of parole. Only when the Board violates the criteria set forth in these provisions may its decision be reviewed. Moreover, the Board need not refer to each and every one of the requisite factors in its decision, nor give them equal weight. Instead, the Board's stated reasons for its decision denying petitioner parole, namely, the nature and seriousness of the offense [for] which he was convicted, constituted sufficient reason for their action.

(Fleischmann Decl. Ex. I at 6 (citations omitted).) The state court further held that "the interview transcript reveals that the Board was fully aware of the facts and circumstance of the underlying crime" and that "the record does not indicate that the Board considered factors outside the scope of Executive Law § 259-i in making its decision or that the Board failed to consider any facts surrounding the crime in denying the parole due to the seriousness of the underlying crime." (Fleischmann Decl. Ex. I at 7-8.)

On April 28, 2005, the Appellate Division, First Department unanimously affirmed the denial of Anthony's Article 78 petition. Anthony v. N.Y. State Div. of Parole, 792 N.Y.S.2d 900 (App. Div. 1st Dep't 2005). The court held that Anthony "did not demonstrate that respondent failed to consider the factors enumerated in Executive Law § 259-i(2)(c)(A) or afforded any of those factors excessive weight. Respondent properly took into account the extremely serious nature of petitioner's crimes, which was not outweighed by his apparently exemplary record of accomplishments while incarcerated." Id. at 900 (citations omitted). On September 13, 2005, Anthony's application for leave to appeal was denied by the New York Court of Appeals. 5 N.Y.3d 708 (N.Y. 2005).

## 2005 Parole Denial

While Anthony's Article 78 petition challenging the 2003 denial of parole was making its way through the state courts, Anthony appeared again before the Parole Board in January 2005, examined this time by Commissioner Robert Dennison. Anthony initially requested a postponement of his appearance because of his pending challenge to his last appearance, but the Parole Board persuaded him to proceed with this new hearing because if his challenge were successful the result would simply be such a new hearing. (Fleischmann Decl. Ex. P at 2-7.) But see Phillips v. Dennison, N.Y.L.J., Oct. 12, 2006, at 23 (N.Y. Sup. Ct.) (remanding "for issuance of a determination granting parole to petitioner, absent any adverse change in circumstances since the September 2005 hearing," instead of simply remanding for a de novo hearing, after holding that Board's decision was so irrational as to border on impropriety).

After discussing his sentence and the circumstances surrounding the underlying offense, Anthony expressed remorse for the crime. (Fleischmann Decl. Ex. P at 9-14.) The Parole Board

5

noted that "the official version" of the events of March 27, 1965, "differs significantly from" Anthony's version in that the police reports describe murder in the course of a robbery of roughly $3,500, whereas Anthony describes an argument over the sanitary practices of the meat market and states that he had possession of the money as a result of his work delivering meat and making bank runs. (Fleischmann Decl. Ex. P at 9-18.) In light of Anthony's version, the Parole Board questioned him about any history of violent outbursts. (Fleischmann Decl. Ex. P at 15-17.)

During the interview, Anthony explained that he was "very sorry" and "That happened and I can't change it. All I can try to do is better myself. Over the time I've been incarcerated I feel very strongly that I have made that adjustment. I have bettered myself. I've taken advantage of all the rehabilitation programs that [were] available. And even add on to the programs to not only help myself, but help other guys inside also." (Fleischmann Decl. Ex. P at 13-14.) To which Commissioner Dennison responded, "Yeah, I know you have done very well in prison. . . . You also have no [disciplinary] tickets since what, 1992? You've only had one tier-2 in forty years?" (Fleischmann Decl. Ex. P at 14.) Anthony further argued to the Parole Board that he was not the same person he was in 1965 and asked to be judged as he is today. (Fleischmann Decl. Ex. P at 18-19.) Commissioner Dennison responded, "We're sure you're not the same person. We're not implying you are. And facility participation or facility programs and good disciplinary record, it's not a question of outweighing the crime. It's just a part that we consider." (Fleischmann Decl. Ex. P at 19.) In response to Anthony's question about the consideration that his release would "so deprecate the seriousness of his crime as to undermine respect for law," Commissioner Dennison agreed that the nature of the offense would never

change but explained:

> [T]he judge sentenced you to twenty to life. Three people are dead. You did it. Somebody could make the argument that to release you would deprecate the seriousness of the instant offense and undermine respect for law, because we're letting someone out who took three lives. I'm just saying if someone wanted to make that argument, it's a legitimate argument. We understand your point of view. You can't change it. You've been in here forty years. It's an awfully long time. You're not the same person. It's just a question of, you know, whether we feel that you should be released in spite of the fact that three people are dead. So I don't know. It's hard, you know.

(Fleischmann Decl. Ex. P at 19-20.)

As with his previous ten attempts to obtain parole, Anthony's eleventh attempt was rejected. The Board's decision, denying parole and ordering Anthony held another 24 months, stated in its entirety:

> Your instant offense of murder[1] first involves you killing three former employers of yours by shooting them. Your positive programming and excellent disciplinary record have been taken into consideration. We also note your lack of a prior criminal record and extremely lengthy period of incarceration (approximately forty years). However, you took three human lives. And in spite [of] the positive factors in your case, this panel feels that to release you at this time would deprecate the seriousness of your extremely violent criminal act and undermine respect for law. The guidelines are unspecified.

(Fleischmann Decl. Ex. P.)

In the instant petition, Anthony asserts that: (1) the denial of parole was arbitrary and capricious because the Parole Board disregarded the "strong rehabilitative component" of the

---

[1] The court notes that the Board's Release Decision Notice dated January 24, 2005, erroneously states that Anthony's offense was first degree manslaughter. (See Resp. Ex. M.)

parole statute, Silmon v. Travis, 95 N.Y.2d 470, 477 (N.Y. 2000), and relied exclusively on the serious nature of Anthony's offense; and (2) he was denied equal protection of the laws by the Board's systematic denial of parole to prisoners convicted of violent felony offenses, especially first and second-degree murder.

## DISCUSSION

As a threshold matter, the court notes that Anthony has incorrectly named the New York State Division of Parole and the Attorney General as respondents in this habeas action. The proper respondent in an action challenging parole procedures is the warden of the prison in which the petitioner is confined. See Boddie v. N.Y. State Div. of Parole, 285 F. Supp. 2d 421, 427 (S.D.N.Y. 2003). Nevertheless, in light of the court's obligation to hold submissions by pro se litigants to less stringent standards, the petition will be treated as if Anthony had properly named the warden as respondent. See id.

### I. AEDPA Standard of Review

The Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), enacted in 1996, established a deferential standard that federal habeas courts must apply when reviewing state court convictions. 28 U.S.C. § 2254(d). The statute provides, in pertinent part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The statutory language "clearly established Federal law, as determined by the Supreme Court of

the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412 (2000). A state court decision is "contrary to" clearly established Supreme Court precedent if "the state court applies a rule that contradicts" Supreme Court precedent or if "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from that precedent." Id. at 405-06. With respect to the "unreasonable application" clause, "a federal habeas court . . . should ask whether the state court's application of clearly established federal law was objectively reasonable." Id. at 409. In determining whether an application was objectively unreasonable, "the most important point is that an unreasonable application of federal law is different from an incorrect application of federal law." Id. at 410. Interpreting Williams, the Second Circuit has added that, although "[s]ome increment of incorrectness beyond error is required[,] . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks and citations omitted).

This deferential review of state court judgments is available only when the federal claim has been "adjudicated on the merits" by the state court. Aparicio v. Artuz, 269 F.3d 78, 93 (2d Cir. 2001). If there is no such adjudication, the deferential standard does not apply, and "we apply the pre-AEDPA standards, and review de novo the state court disposition of the petitioner's federal constitutional claims." Id. (citing Washington v. Schriver, 255 F.3d 45, 55 (2d Cir. 2001)). For the purposes of AEDPA, a state court "adjudicates" a petitioner's federal constitutional claims "on the merits" whenever "it (1) disposes of the claim 'on the merits,' and

(2) reduces its disposition to judgment." Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001). When a state court does so, a federal habeas court must defer in the manner prescribed by AEDPA to the state court's decision on the federal claim, even if the state court does not explicitly refer to either the federal claim or relevant federal case law. Id. To determine whether a state court has disposed of a claim on the merits, the court considers: "(1) what the state courts have done in similar cases; (2) whether the history of the case suggests that the state court was aware of any ground for not adjudicating the case on the merits; and (3) whether the state court's opinion suggests reliance upon procedural grounds rather than a determination on the merits." Id. at 314 (quoting Mercadel v. Cain, 179 F.3d 271, 274 (5th Cir. 1999)). In addition, a "conclusive presumption" that the state court decision "rest[s] on the merits of the federal claim" applies to decisions "fairly appearing to rest primarily on federal law or to be interwoven with federal law, . . . [a]bsent a clear and express statement of reliance on a state procedural bar." Jimenez v. Walker, 458 F.3d 130, 138 (2d Cir. 2006) (holding that presumption of Harris v. Reed, 489 U.S. 255, 262-63 (1989), applies equally to both AEDPA-deference and procedural-bar determinations).

Moreover, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Habeas relief is only available for violations of "the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "Errors of state law are not subject to federal habeas review." Cartagena v. Connelly, No. 06 Civ. 2047, 2006 WL 2627567, at *6 (S.D.N.Y. Sep. 14, 2006).

II. **Exhaustion**

Habeas petitioners must normally exhaust the remedies available in state court before

10

seeking relief in federal court. See 28 U.S.C. § 2254(b)(1). In order to exhaust a denial of parole under New York law, "an inmate must first file an administrative appeal with the Division of Parole's Appeals Unit. If that appeal is denied, he must seek relief in state court pursuant to Article 78 of the Civil Practice Law and Rules." Morel v. Thomas, No 02 Civ. 9622, 2003 WL 21488017, at *2 n.3 (S.D.N.Y. June 26, 2003) (internal citations omitted). If the Article 78 petition is denied, the inmate must appeal that denial to the highest state court capable of reviewing it. See Tatta v. Miller, No. 05 Civ. 1205, 2005 WL 2806236, at *2 (E.D.N.Y. Oct. 27, 2005).

Exhaustion of a federal constitutional claim in state court does not invariably require citation of "book and verse on the federal constitution." Picard v. Connor, 404 U.S. 270, 278 (1971) (internal quotation marks omitted). A claim may be presented for habeas review even if the federal grounds were not explicitly asserted before the state courts if the petitioner, in asserting his claim before the state court, relied on pertinent federal cases employing constitutional analysis, relied on state cases employing constitutional analysis in like fact situations, asserted his claims in terms so particular as to call to mind specific rights protected by the constitution, or alleged a pattern of facts well within the mainstream of constitutional litigation. See Daye v. Attorney Gen. of N.Y., 696 F.2d 186, 194 (2d Cir. 1982).

Pursuant to AEDPA, a district court may now, in its discretion, deny on the merits habeas petitions containing unexhausted claims–so-called "mixed petitions." See 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state."); see also Pratt v. Greiner, 306 F.3d 1190, 1197 (2d Cir. 2002) (recognizing that the

district court may deny on the merits unexhausted habeas claims). "The law is unsettled in the Second Circuit regarding the proper response to habeas petitions containing unexhausted claims. A majority of district courts in the Second Circuit dismiss unexhausted claims that are 'patently frivolous.'" Wheeler v. Phillips, No. 05 Civ. 4399, 2006 WL 2357973, at *5 (E.D.N.Y. Aug. 15, 2006); see also Wilson v. Goord, No. 00 Civ. 4849, 2004 WL 226149, at *3 (S.D.N.Y. Feb. 6, 2004); Naranjo v. Filion, No. 02 Civ. 5449, 2003 WL 1900867, at *8 (S.D.N.Y. Apr. 16, 2003); but see Tatta v. Miller, No. 05 Civ. 1205, 2005 WL 2806236, at *2 (E.D.N.Y. Oct. 27, 2005) (expressing reservations about "patently frivolous" standard and opining that for dismissal a claim "need only be 'nonmeritorious'").

In this case, Anthony has properly exhausted his state-court remedies regarding his due process claim with respect to the 2003 denial of parole. The state courts adjudicated this claim on the merits in dismissing Anthony's Article 78 petition. These adjudications are, therefore, entitled to AEDPA deference. However, as Respondent points out and Anthony concedes in his reply brief, Anthony did not fairly present his equal protection claim to the state courts and so it is not exhausted. Because of this, Anthony has asked to withdraw this claim and so the court will not address it.[2]

### III. Mootness

Respondent argues that Anthony's challenge to the Board's 2003 denial of parole is now moot because Anthony appeared before the Board in 2005 and was again denied parole. However, as Anthony argues in reply, the Board's alleged violations of his constitutional rights

---

[2] If Anthony had not withdrawn his equal protection claim, the court would have dismissed it as patently frivolous in accordance with the reasons set forth in Salahuddin v. Unger, No. 04 Civ. 2180, 2005 WL 2122594, at *7 (E.D.N.Y. Sep. 2, 2005).

appear to be "capable of repetition, yet evading review." See Romer v. Travis, No. 03 Civ. 1670, 2003 WL 21744079, at *4-*5 (S.D.N.Y. July 29, 2003). The process of litigating his challenge to the January 2003 denial so as to exhaust his state court remedies before seeking federal habeas relief took Anthony more than the two years between parole denials. Furthermore, there is no indication that the errors Anthony complains of with respect to the 2003 denial of parole were somehow corrected in the procedure resulting in the subsequent denial of parole in 2005. See Cartagena v. Connelly, No. 06 Civ. 2047, 2006 WL 2627567, at *6 (S.D.N.Y. Sep. 14, 2006) (rejecting argument that challenge to parole denial was moot). Rather, the record gives every indication that the 2005 denial was based on the same reasoning as the 2003 denial.

Respondent's mootness argument is especially troublesome in light of the Parole Board's response to Anthony's attempt to postpone his 2005 parole hearing so as to avoid rendering his challenge to the 2003 denial moot. (Fleischmann Decl. Ex. P at 2-7.)

Nevertheless, the court need not fully address the "thorny issue" of mootness, since Anthony's claims can easily be rejected on the merits. See Boddie, 285 F. Supp. 2d at 427-28; Salahuddin v. Unger, No. 04 Civ. 2180, 2005 WL 2122594, at *4-*5 (E.D.N.Y. Sep. 2, 2005) (noting "some merit" to petitioner's argument that deeming challenge moot would enable respondent to evade judicial review, but declining to decide issue because petition lacks merit); Brown v. Thomas, No. 02 Civ. 9257, 2003 WL 941940, at *1 (S.D.N.Y. Mar. 10, 2003) ("As so often in habeas corpus cases, potentially complex and difficult issues about the various obstacles to reaching the merits should not be allowed to obscure the fact that the underlying claims are totally without merit.").

## IV. **Due Process Claim**

Anthony asserts that the Parole Board violated his due process rights by arbitrarily and capriciously deciding to deny him parole in violation of the legislative requirements of New York Executive Law § 259-i. This argument is without merit.

"In order for a state prisoner to have an interest in parole that is protected by the Due Process Clause, he must have a legitimate expectancy of release that is grounded in the state's statutory scheme." Barna v. Travis, 239 F.3d 169, 170 (2d Cir. 2001); see Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex, 442 U.S. 1, 11-13 (1979). It is well established, however, that "[t]he New York parole scheme is not one that creates in any prisoner a legitimate expectancy of release. . . . Accordingly, [New York prisoners] have no liberty interest in parole, and the protections of the Due Process Clause are inapplicable." Barna, 239 F.3d at 171.

Nevertheless, several lower courts have held that the arbitrary or capricious denial of parole may violate the Due Process Clause in certain circumstances. See Cartagena v. Connelly, No. 06 Civ. 2047, 2006 WL 2627567, at *7 (S.D.N.Y. Sep. 14, 2006) (collecting cases); see also Graziano v. Pataki, No. 06 Civ. 0480, 2006 WL 2023082, at *7 (S.D.N.Y. July 17, 2006) ("[T]here is an entitlement to a process of decision-making, which comports with the statutory guidelines of consideration to all relevant statutory factors."). While this approach has been questioned, see Tatta v. Miller, No. 05 Civ. 1205, 2005 WL 2806236, at *4 n.2 (E.D.N.Y. Oct. 27, 2005), the court need not decide this issue since even if such a due process right exists, it was not violated in this case. See, e.g., Cartagena v. Connelly, No. 06 Civ. 2047, 2006 WL 2627567, at *7 (S.D.N.Y. Sep. 14, 2006); Tatta v. Miller, No. 05 Civ. 1205, 2005 WL 2806236, at *4 (E.D.N.Y. Oct. 27, 2005).

14

The limited federal liberty interest in not being denied parole has been said to "extend[] only to not being denied a petition arbitrarily or capriciously, based on inappropriate consideration of a protected classification or an irrational distinction, or by reason of any other constitutionally unlawful grounds." Manley v. Thomas, 255 F. Supp. 2d 263, 266 (S.D.N.Y. 2003). "[D]enial of parole may be justified on the basis of reasonable considerations defined by statute, including the inmate's criminal history and seriousness of the offense for which he is in custody." Davis v. Thomas, 256 F. Supp. 2d 190, 191 (S.D.N.Y. 2003); see also Romer v. Travis, No. 03 Civ. 1670, 2003 WL 21744079, at *6 (S.D.N.Y. July 29, 2003) ("Denial of parole is neither arbitrary nor capricious when the Parole Board relies on the factors defined by New York statute.").

Under New York law,

> Discretionary release on parole shall not be granted merely as a reward for good conduct or efficient performance of duties while confined but after considering if there is a reasonable probability that, if such inmate is released, he will live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society and will not so deprecate the seriousness of his crime as to undermine respect for law.

N.Y. Exec. Law § 259-i(2)(c)(A). This statute defines the factors the Parole Board shall consider in making the parole release decision:

> (i) the institutional record including program goals and accomplishments, academic achievements, vocational education, training or work assignments, therapy and interpersonal relationships with staff and inmates; (ii) performance, if any, as a participant in a temporary release program; (iii) release plans including community resources, employment, education and training and support services available to the inmate; (iv) any deportation order issued by the federal government against the

15

> inmate while in the custody of the department of correctional services and any recommendation regarding deportation made by the commissioner of the department of correctional services pursuant to section one hundred forty-seven of the correction law; and (v) any statement made to the board by the crime victim or the victim's representative, where the crime victim is deceased or is mentally or physically incapacitated.

Id. In addition, where, as here, an inmate's minimum sentence was imposed by the court, the Parole Board must also consider:

> (i) the seriousness of the offense with due consideration to the type of sentence, length of sentence and recommendations of the sentencing court, the district attorney, the attorney for the inmate, the pre-sentence probation report as well as consideration of any mitigating and aggravating factors, and activities following arrest and prior to confinement; and (ii) prior criminal record, including the nature and pattern of offenses, adjustment to any previous probation or parole supervision and institutional confinement.

Id., by incorporation of N.Y. Exec. Law § 259-i(1)(a).

The statute makes clear, therefore, that the seriousness of the prisoner's crime is "considered relevant both to the likelihood that the inmate will not be a danger to the community and to the independent requirement that early release not 'deprecate the seriousness of his crime so as to undermine respect for law.'" Brown v. Thomas, No. 02 Civ. 9257, 2003 WL 941940, at *2 (S.D.N.Y. Mar. 10, 2003). In addition, "[t]he Parole Board has discretion to accord these considerations whatever weight it deems appropriate, and need not expressly discuss each of the reasons in its determination." Manley v. Thomas, 255 F. Supp. 2d 263, 267 (S.D.N.Y. 2003) (citing Garcia v. N.Y. State Div. of Parole, 657 N.Y.S.2d 415, 418 (App. Div. 1st Dep't 1997); King v. N.Y. State Div. of Parole, 83 N.Y.2d 788, 791 (N.Y. 1994)).

Courts in this circuit have routinely rejected habeas petitions asserting that parole denials

16

were arbitrary because they allowed the nature of the underlying criminal offenses to outweigh petitioners' positive institutional records. See, e.g., Cartagena v. Connelly, No. 06 Civ. 2047, 2006 WL 2627567, at *9 (S.D.N.Y. Sep. 14, 2006); Mitchell v. Conway, No. 04 Civ. 1088, 2006 WL 508086, at *5 (E.D.N.Y. Mar. 1, 2006) ("The Parole Board may permissibly consider that violence when deciding whether to release Mitchell into society."); Salahuddin v. Unger, No. 04 Civ. 2180, 2005 WL 2122594, at *6 (E.D.N.Y. Sep. 2, 2005); Morel v. Thomas, No 02 Civ. 9622, 2003 WL 21488017, at *5 (S.D.N.Y. June 26, 2003) ("The Board was entitled to determine that the nature of the crime outweighed the positive aspects of his record."); Manley v. Thomas, 255 F. Supp. 2d 263, 267 (S.D.N.Y. 2003); Brown v. Thomas, No. 02 Civ. 9257, 2003 WL 941940, at *2 (S.D.N.Y. Mar. 10, 2003) (Even if petitioner were fully rehabilitated, but the Board "denied parole principally because of the nature of the crime with which he is charged, the Board was fully entitled to determine that the nature of the crime outweighed the positive aspects of his record.").

In this case, the record indicates that the Parole Board considered the various statutory factors, including Anthony's excellent institutional record, but ultimately determined that the extreme gravity and brutal nature of Anthony's crime outweighed the factors favoring release. The denial of parole on this basis was in accordance with New York law, which allows the denial of parole based solely on the severity of the offense so long as there is "a showing of some aggravating circumstances beyond the inherent seriousness of the crime itself." King v. N.Y. State Div. of Parole, 598 N.Y.S.2d 245, 251 (App. Div. 1st Dep't 1993), aff'd 83 N.Y.2d 788 (1994). The denial, therefore, did not violate Anthony's right to due process. While New York courts are currently embroiled in controversy over challenges to parole denials, including even

the proper venue for such challenges, see, John Caher, "Decisions Split on Right Venue for Parole Cases," N.Y.L.J., May 15, 2006, resolution of the question of the proper meaning and significance of the seriousness of the offense factor is best left to the New York courts. Since the Parole Board's decision in Anthony's case was supported by New York law, this court cannot say that the Parole Board's denial was arbitrary. The state courts' determination that the denial of parole was in accordance with state law and was not arbitrary was neither contrary to nor an unreasonable application of clearly established federal law nor was it based on an unreasonable determination of the facts. Thus, Anthony's due process claim does not merit habeas relief.

## CONCLUSION

For the reasons stated above, the petition for a writ of habeas corpus is denied. Because Anthony has failed to make a "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2) (1996), no certificate of appealability will be granted. The Clerk of Court is directed to enter judgment accordingly.

SO ORDERED.

Allyne R. Ross
United States District Judge

Dated: January 3, 2007
Brooklyn, New York

SERVICE LIST:

Kazel Anthony
65-A-0132
Wallkill Correctional Facility
Route 208
Box G
Wallkill, NY 12589-0286


Respondents' Attorney:
Lisa Ellen Fleischmann
NYS Office of the Attorney General
120 Broadway
New York, NY 10271